UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

INTERMARE TRANSPORT GMBH                         :
                                                 :
                                                 :
                          Plaintiff,             :          08 cv 3181 (WHP)
                                                 :
         - against -                             :          ECF CASE
                                                 :
NAMIREI-SHOWA CO., LTD., NAKANISHI KIKAI,        :
and SN NAVIGATION PANAMA a/k/a                   :
SN NAVIGATION S.A. OF PANAMA                     :
                                                 :
                          Defendants.            :

------------------------------------------------------------------------X


# MEMORANDUM OF LAW IN OPPOSITION TO
## MOTION TO VACATE MARITIME ATTACHMENT AND
## DISMISS THE VERIFIED COMPLAINT


LENNON, MUPRHY & LENNON, LLC
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
(212) 490-6050
(212) 490-6070

*Attorneys for Plaintiff*
*Intermare Transport GmbH*

Patrick F. Lennon, Esq.
Anne C. LeVasseur, Esq.

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS .......................................................................................................3

ARGUMENT............................................................................................................................9

POINT I
INTERMARE HAS SATISFIED ITS BURDEN OF PROOF UNDER SUPPLEMENTAL
ADMIRALTY RULES B AND E(4)(f) ...................................................................................9

POINT II
INTERMARE HAS A VALID PRIMA FACIE MARITIME CLAIM AGAINST
NAKANISHI .........................................................................................................................12

CONCLUSION......................................................................................................................18

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Aqua Stoli Shipping Ltd. v. Garnder Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006)
.................................................................................1,2, 10,11,12,13,14

*Finecom Shipping Ltd. v. Multi Trade Enters. AG*, 2005 U.S. Dist LEXIS 25761
(S.D.N.Y. October 24, 2005)..............................................................................15

*Glory Wealth Shipping Service Ltd. v. Five Ocean Corporation Ltd.*,
2008 U.S. Dist. LEXIS 60967 (S.D.N.Y. August 4, 2008)...........................................15

*Hawknet Ltd. v. Overseas Shipping Agencies,* 2008 U.S. DIST. LEXIS 35542
(S.D.N.Y. April 29, 2008...............................................................................11,12

*Padre Shipping, Inc. v. Yong He Shipping a/k/a Yong He Shipping (HK) Limited,*
2008 U.S. Dist. LEXIS 34428 (S.D.N.Y. April 25, 2008)............................................13

*Ronda Shipping Management Inc. v. Doha Asian Games Organising Committee,*
511 F.Supp. 2d 399, 2007 U.S. Dist. LEXIS 72694 (S.D.N.Y. September 21, 2007).............14

*Stolt-Neilsen SA v. Celanese AG*, 430 F.3d 567 (2d Cir. 2005).......................................17

*Transportes Navieros Y Terrestes, S.A. de C.V. v. Fairmount Heavy Transport, N.A.,*
2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007)............................................13,14

*The Rice Co. v. Express Sea Transp. Corp.*, 2007 U.S. Dist. LEXIS 84300
(S.D.N.Y. November 15, 2007).........................................................................12

*Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2006 U.S. Dist. LEXIS 95870
(S.D.N.Y. August 15, 2006).........................................................................11,14

*Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002)....................................10

*World Reach Shipping Ltd. v. Industrial Carriers Inc.*, 2006 U.S. Dist. LEXIS 83224
(S.D.N.Y. November 9, 2006)..........................................................................3,14

### FEDERAL RULES

Supplemental Rules for Admiralty and Maritime Claims and Forfeiture Action
Rule B.......................................................................................1,2, 8, 9,10,11,12,18

Supplemental Rules for Admiralty and Maritime Claims and Forfeiture Action
Rule E.................................................................1,2,9,10,11,12,13,18

## INTRODUCTION

Plaintiff, Intermare Transport GmbH (hereinafter "Intermare" or "Plaintiff") by and through its undersigned counsel, Lennon, Murphy & Lennon, LLC, respectfully submits this Memorandum of Law in opposition to the motion to vacate maritime attachment and dismiss Plaintiff's Verified Complaint filed by Defendant Nakanishi Kikai (hereinafter "Nakanishi" or "Defendant"). Intermare also respectfully submits the accompanying declarations of Paul Taylor ("Taylor Decl."), of Middleton Potts, Intermare's English Solicitor, and Anne C. LeVasseur ("LeVasseur Decl.") in support of its opposition. Intermare's attachment against Nakanishi should not be vacated because this Court validly issued the attachment order pursuant to Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure ("Rule B") and in accord with the United States Court of Appeals for the Second Circuit's decision in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006). The attachment order was proper because: (1) Intermare has a valid *prima facie* admiralty claim against the Defendants arising out of two Charter Party contracts dated April 16, 2007 for the charter of the motor vessels "TBN 1" and "TBN 2"; (2) Nakanishi cannot be found within the Southern District of New York or within any other federal judicial district; (3) Nakanishi has a property interest in the funds attached in the District; and (4) there is no statutory bar to the attachment. *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006). Accordingly, for the reasons set forth herein, Intermare has satisfied its burden under Supplemental Admiralty Rule E(4) to show cause why the attachment should not be vacated.

Nakanishi contends that Intermare does not have a prima facie admiralty claim against it because Nakanishi was never entered into either charter party nor authorized any individual from either of the named Defendants to execute the charter parties on its behalf. *Nakanishi's*

*Memorandum of Law at 3.* Nakanishi argues that "the Complaint cannot support Intermare's burden to show it has a contractual relationship of any kind with Nakanishi or (if one assumes Nakanishi was a party to the Charter Parties) that Nakanishi ever breached the Charter Parties." *Nakanishi Memorandum of Law at 8.* Nakanishi asks this Court ignore the clear and unambiguous test set forth above for resolving a motion to vacate, and instead to conduct an intensive factual inquiry into the merits of Intermare's underlying claim. However, the substantive determination of the extent of Nakanishi's liability under the Charter Parties is not properly before this Court. It is well settled law in the Second Circuit that in cases such as this, where the substantive dispute will be resolved in foreign arbitration, the court is not to act as a trier of fact in a Rule E(4)(f) post-attachment hearing.

Ignoring this well-settled law, Nakanishi would nonetheless have this Court make determinations of law and fact. This is precisely the type of inquiry that the Second Circuit has indicated is beyond a district court's discretion under Rule E (4)(f). In *Aqua Stoli*, in the context of a Rule E(4)(f) attachment hearing, the Court held that it is inappropriate for the district court to engage in fact intensive inquiries into the substantive aspects and merits of the underlying claims. *Aqua Stoli Shipping Ltd.*, 460 F.3d at 447. In actuality, this action is ancillary to the London arbitration and the English High Court proceeding, which are currently ongoing, and which will ultimately determine whether Intermare is entitled to recover against Nakanishi on its claims.

Thus, in keeping with *Aqua Stoli*, it would be inappropriate for this Court to engage in a fact intensive inquiry regarding the merits of Intermare's underlying claim, as Nakanishi urges. This Court has jurisdiction over the attachment action, a pre-judgment remedy, and thus its inquiry is limited to only whether Intermare has met the requirements of Rule B. As will be

more fully set forth herein, Intermare has met its burden to show cause why the attachment should not be vacated. To the extent that Nakanishi's motion to vacate addresses the facts involved in the underlying dispute between the parties, Intermare respectfully submits that such issues are properly subject to London arbitration proceedings. As such, this Court should decline to consider the substantive merits of the underlying dispute which are properly the subject of the London arbitration and the English High Court proceedings. *See World Reach Shipping Ltd. v. Industrial Carriers Inc.*, 2006 U.S. Dist. LEXIS 83224 at *7 (S.D.N.Y. November 9, 2006)(indicating that to the extent defendant challenged plaintiff's prima facie claim, the substantive merits were more properly the subject of the "underlying arbitration.")

For the foregoing reasons, and the reasons explained more fully below, the attachment should not be vacated.

## STATEMENT OF FACTS

Intermare was, at all times material to this action, the charterer of the motor vessel "TBN 1" and the motor vessel "TBN 2" (hereinafter collectively "the Vessels"). *Verified Complaint ¶ 6.* By two separate charter parties, each dated April 16, 2007, Intermare time chartered the Vessels from defendants Namirei-Showa Co., Ltd., (hereinafter "Namirei-Showa"), Nakanishi, and SN Navigation Panama a/k/a SN Navigation S.A. of Panama (SN Navigation) (hereinafter collectively "Defendants") for a long term charter of seven years, with charterer's option to further extend the charter parties for an eighth, ninth, or tenth year. *Verified Complaint ¶ 8, 9. Copies of the Charter Parties are annexed to the LeVasseur Decl. as Exhibit 1 and 2.* The Charter Parties list "Intermare Transport GmbH Hamburg or their guaranteed nominee which to be always guaranteed by Alfred C. Toepfer International GmbH" as charterers and "Namirei-

3

Showa or Nakanishi Kikai or their guaranteed nominee" as owners. *See Exhibits 1 and 2 to LeVasseur Decl.*

The terms of the Charter Parties were negotiated between Mr. Ishii of Fairfield Japan Ltd. Tokyo (hereinafter "Fairfield Japan"), shipbrokers for Namirei-Showa and Nakanishi, and Maersk Brothers (UK) Ltd. London (hereinafter "Maersk"), shipbrokers for Intermare. *Taylor Decl. ¶ 15, 19.*

At the time the parties entered into the Charter Parties, construction of the Vessels had not yet begun. *Verified Complaint ¶ 11.*   Pursuant to the terms of the Charter Parties, Intermare agreed to charter the Vessels from Defendants with an option to purchase the Vessels at any time at either the end of the seventh year, eighth year, ninth year or tenth year. *Verified Complaint ¶ 12.* The Vessels were to be approximately 12,5000 deadweight and were to be built at the shipyards of Yangzhou Ryuwa Shipbuilding Co. Ltd. or Yangzhou Longehaun Shipbuilding Co., Ltd. *Verified Complaint ¶ 13.*

During the negotiations leading up to the Charter Parties, Intermare and Maersk believed that Fairfield Japan was acting on behalf of both Namirei-Showa and Nakanishi, as owners of the Vessels, given the clear communication of information coming from Fairfield Japan on behalf of both Namirei-Showa and Nakanishi. *Taylor Decl. ¶ 18.* Intermare understood that Namirei-Showa and Nakanishi would be owners of the Vessels and subsequently learned that both companies would also be building the Vessels, along with two 29,200 deadweight bulk carriers. *Taylor Decl. ¶ 18, 20.* Namirei-Showa and Nakanishi were not represented by separate brokers, and as seen from correspondence from Fairfield Japan leading up to the Charter Parties, the terms were agreed to by Fairfield on behalf of both Namirei-Showa and Nakanishi. *Taylor Decl. ¶ 20.*

4

On or about November 14, 2006, Namirei-Showa and Nakanishi sent a firm offer, with various subject remaining, setting forth the specific terms of the Charter Parties to Maersk. *A copy of this offer is annexed to the Taylor Decl. as Exhibit 3.* This offer was headed "Offer-Nakanishi Kikai 12, 500 dwt – Toepfer" and listed owners as "Namirei-Showa or Nakanishi or their guaranteed nominee". *See Exhibit 3 to Taylor Decl.* Page two of this offer contains a message titled "Broker's comments" and states:

> We understand that Nakanishi Kikai Tokyo will be handling the specification (Kogoshima-san) discussions – he is renound for very through (read longwinded). In whcih (sic) case if a change of specification is required then negotiations will be lengthy.

> Like Nantong Nikka the Ownership of the vessels wil (sic) now be shared among Namirei-Showa and Nakanishi Kikai to aid financing, this will not change our discussions; owners are determined to conclude these ships with Toepfer.

*See Exhibit 3 to Taylor Decl.* It was therefore apparent to Intermare that Nakanishi was a contractual party to the Charter Parties and was to have an ownership interest in the Vessels. *Taylor Decl. ¶ 22.* On November 16, 2006, the parties reached a binding agreement on behalf of Namirei-Showa and Nakanishi was evidenced by the recap of the agreed terms of the Charter Parties. *A copy of this recap is annexed to the Taylor Decl. as Exhibit 2.*

Neither Nakanishi, or Namirei-Showa, or Fairfield Japan took any subsequent actions, at any time, which gave Intermare any notice or indication that Nakanishi was not a party to the charter parties. *Taylor Decl. ¶ 25.* On the contrary, the messages Intermare received from Fairfield Japan reiterated Nakanishi's close involvement with the constructions of the Vessels and the charter parties. *Taylor Decl. ¶ 26.*

On or about January 12, 2007, Intermare received a message from the owners of the Vessels through its broker requesting an extension of the subjects of the offer. *Taylor Decl. ¶ 27.* This message reads:

> Owners were at pains today to highlight that they hope to be able to conclude all the necessary outstanding points before the 15th Feb – Nakanishi are pushing the Imabari based Ship Designer and are confident to see design amendments etc in the near future.

*A copy of this correspondence is annexed as Exhibit 6 to the Taylor Decl.* This request for an extension clearly came from Nakanishi as an owner of the Vessel. Nakanishi's status as owners of the Vessel was further confirmed in a message dated January 22, 2007 which discussed Nakanishi's involvement in the design process of the Vessels. *A copy of this correspondence is annexed as Exhibit 7 to the Taylor Decl.* A message dated February 26, 2007 from Mr. Ishii of Fairfield Japan further confirmed Nakanishi's ownership of the Vessels. This message reads in part:

> Thanks for the Charterers' acceptance of the delivery of the vessel through the additional charter rate to be discussed which we have informed Namirei-Showa and Nakanishi Kikai.

*A copy of this correspondence is annexed as Exhibit 8 to the Taylor Decl.* In subsequent brokers' communications, Nakanishi continues to be named as an Owner of the Vessels. In fact, the clean recap of the charter party dated April 13, 2007 is headed "Nakanishi Kikai 12,500 dwt – Toepfer". *A copy of this clean recap is annexed as Exhibit 9 to the Taylor Decl.*

The Charter Parties were signed on May 28, 2007. *Taylor Decl. ¶ 35.* The Charter Parties were signed on behalf of the owners by a "Mr. Watanabe". Based on, *inter alia,* the previous correspondences from Fairfield Japan, Intermare reasonably believed Mr. Watanabe had authority to sign on behalf of Nakanishi. *Taylor Decl. ¶ 9.* Following the execution of the

Charter Parties, Intermare's understanding was that Nakanishi remained as a party to the Charter Parties as it continued to be involved with the construction of the Vessels. *Taylor Decl. ¶ 36.*

Several months after the parties executed the Charter Parties, the Defendants informed Intermare that they were encountering difficulties with the shipyards. *Verified Complaint ¶ 14.* Intermare first became aware of the problems with the Vessels in November, 2007. On or about November 20, 2007, Mr. Ishii of Fairfield Japan sent correspondence to Maersk addressing Intermare's concerns regarding construction of the Vessels. This statement reads: "We, Namirei-Showa and Nakanishi Kikai and its guaranteed nominee, as owners, would like to respond to your request dated 16th Nov. 2007." *A copy of this correspondence is annexed as Exhibit 11 to the Taylor Decl.* This correspondence suggests that as of November 20, 2007, nearly six months after the Charter Parties had been signed, Namirei-Showa and Fairfield Japan believed that Nakanishi remained a contracting party to the Charter Party. On December 28, 2007, Fairfield Japan sent correspondence to Maersk consisting of an update report from Namirei-Showa on the progress of the construction of the Vessels. *Taylor Decl. ¶47.* This correspondence reads as follows:

> This vessel will construct Nakanaishi (sic) shipyard where Mr. Nakanishi have purchased. Namirei have cancelled the contract with Zhenjiang Yong'an Shipyard because the yard have too much bullish and very bad attitude against the contract.
> ***
> Anyway details of Nakanishi Shipyard and delivery timing for the both vessels which have to check with Namirei and Nakanishi in the early next year.

*A copy of this message is annexed as Exhibit 13 to the Taylor Decl.* Further, a message dated January 11, 2008 confirmed that Fairfield Japan was still communicating with Nakanishi as owners of the Vessels. *Taylor Decl. ¶ 49.* This message reads as follows: "Fairfield will keep

giving pressure to both Namirei and Nakanishi and will try to set up meeting with both as soon as possible." *A copy of this message is annexed as Exhibit 15 to the Taylor Decl.*

On February 13, 2008, Defendants provided Intermare with written notice of their repudiation of the charter parties as they were unable to secure shipyards in which to build the Vessel. *Verified Complaint ¶ 14, 15.* Dispute later arose between the parties under the Charter Parties with respect to Defendant's repudiation of the Charter Parties.

The Charter Parties provide that any disputes between the parties shall be referred to the London Maritime Arbitration Association and according to the L.M.A.A. rules, with English law to apply. *Sees Exhibit 1 and 2 to LeVasseur Decl.*

On or about March 10, 2008, Intermare commenced arbitration proceedings in London against Defendants. On or about June 3, 2008, Namirei-Showa and SN Navigation filed their Defence and Challenge to Jurisdiction submission in the arbitration proceedings. On or about July 16, 2008, Intermare filed its reply submission. Nakanishi has refused to take part in the arbitration proceedings.

On March 31, 2008, Intermare initiated this action and prayed for the issuance of an ex parte order of maritime attachment pursuant to Rule B against the Defendants to obtain jurisdiction and to obtain pre-judgment security for its claims in aid of the London arbitration. *Verified Complaint ¶ 21.*

The Verified Complaint prayed for issuance of Rule B attachment in the total amount of $35,455,068 inclusive of Intermare's principal claim, interest, and estimated recoverable legal fees and costs against the Defendants. *Verified Complaint ¶ 23, prayer for relief ¶ C.* It also prayed that this Court recognize and confirm any foreign arbitration award or judgment rendered on the claims had therein as a Judgment of this Court. *Verified Complaint prayer for relief ¶ D.*

8

It further prayed that this Court enter judgment against the Defendants on the claims set forth therein. *Verified Complaint prayer for relief ¶ E.*

On April 4, 2008, this Court issued an Ex Parte Order of Maritime Attachment in the amount of $35,455,068. On or about May 12, 2008, pursuant to that Order, garnishee bank Sumitomo Mitsui Banking Corporation attached funds belonging to Nakanishi in the amount of $3,600.

On or about July 24, 2008, Nakanishi filed a Claim Form in the English High Court seeking a declaratory ruling that it is not a party to the London arbitrations and that it is not a party to the London arbitration or a party to the Charter Parties. *A copy of this Claim Form is annexed to the LeVasseur Decl. as Exhibit 3.* Intermare is currently preparing its defence to Nakanishi's Claim, which is due to be filed in the English High Court on September 11, 2008. *Taylor Decl. ¶ 56.*

## ARGUMENT

### POINT I

### INTERMARE HAS SATISFIED ITS BURDEN OF PROOF UNDER SUPPLEMENTAL ADMIRALTY RULES B AND E(4)(f)

Intermare has carried its burden to show cause why the attachment should not be vacated. Under Rule B, an order of maritime attachment must issue upon a minimal *prima facie* showing provided that the defendant cannot be found within the district in which the assets are sought to be attached. Rule B provides, in relevant part:

> If a defendant is not found within the district..., a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process. The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's

knowledge, or on information and belief, the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Fed. R. Civ. P. Supp. Rule B(1). As summarized by the Court of Appeals for the Second Circuit:

To begin the process, a plaintiff must file a verified complaint praying for an attachment and an affidavit stating that, to the best of the plaintiff's knowledge, the defendant cannot be found within the judicial district. [Fed.R.Civ.P. Supp. Rule B(1).] If the plaintiff's filings comply with these conditions, the court must enter an order authorizing the attachment, which the plaintiff may then serve on any persons in possession of the defendant's property located within the district. The order of attachment may be requested and granted ex parte, though notice of the attachment to the defendant via appropriate service is required. *Id.* Supp. Rules B(2), E(3).

*Aqua Stoli Shipping Ltd.*, 460 F.3d at 438. "The power to grant attachments in admiralty is an inherent component of the admiralty jurisdiction given to the federal courts under Article III of the Constitution," and its "historical purpose has been two-fold: first, to gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment." *Id. Accord Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir. 2002).

Furthermore, in respect of a defendant's right to challenge the validity of a maritime attachment under Rule E(4)(f), the Second Circuit held in *Aqua Stoli* that a plaintiff need only demonstrate that the attachment order was properly issued, *i.e.*: (1) that plaintiff has alleged a valid *prima facie* maritime claim; (2) that the defendant cannot be found within the district; (3) the defendant's property may be found in the district; and (4) that there is no statutory bar. Once the plaintiff has made such a showing, a properly issued attachment order may be vacated only if the defendant can prove any of four limited circumstances, none of which Nakanishi has alleged or proven in this case.

While it is a plaintiff's burden to prove that it has complied with the technical

requirements of Supplemental Admiralty Rule B, it is the moving party's burden to prove one of

the limited equitable bases for vacatur. The Second Circuit held as follows in *Aqua Stoli*:

> We therefore hold that, in addition to having to meet the filing and service
> requirements of Rules B and E, an attachment should issue if the plaintiff
> shows that 1) it has a valid prima facie admiralty claim against the
> defendant; 2) the defendant cannot be found within the district; 3) the
> defendant's property may be found within the district; and 4) there is no
> statutory or maritime law bar to the attachment. Conversely, a district
> court must vacate an attachment if the plaintiff fails to sustain his burden
> of showing that he has satisfied the requirements of Rules B and E. We
> believe vacatur is appropriate in other limited circumstances. While, as
> we have noted, the exact scope of a district court's vacatur power is not
> before us, we believe that a district court may vacate the attachment if the
> defendant shows at the Rule E hearing that 1) the defendant is subject to
> suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain <u>in
> personam</u> jurisdiction over the defendant in the district where the plaintiff
> is located; or 3) the plaintiff has already obtained sufficient security for the
> potential judgment, by attachment or otherwise.

*Aqua Stoli Shipping Ltd.*, 460 F.3d at 445; *Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2006

U.S. Dist. LEXIS 95870 (S.D.N.Y. August 15, 2006).

The Second Circuit emphasized that "Rule B specifies the sum total of what must be

shown for a valid maritime attachment." *Aqua Stoli Shipping Ltd.*, 460 F.3d at 447. Moreover,

the Second Circuit held that upon the plaintiff's showing that the attachment was properly

ordered, and that it complied with the requirements of Rules B and E, the "defendant bears the

burden of establish[ing] any equitable grounds for vacatur." *Id.* at 436. As explained above, the

Rule(E)(4)(f) hearing is not intended to resolve the dispute between the parties, but merely to

determine if the technical requirements of the Rule were met. Moreover, a plaintiff "may

properly rely on allegations in submissions other than the complaint to make a prima facie

showing." *See Hawknet Ltd. v. Overseas Shipping Agencies*, 2008 U.S. Dist. LEXIS 35542 at *9

11

(S.D.N.Y. April 29, 2008). Thus, as long as the plaintiff establishes that it has alleged a *prima facie* maritime claim, the defendant is not present in the district, the defendant's property has been restrained in the district and no other statutory bar to the attachment exists, the attachment should be upheld absent any evidence that the plaintiff abused or improperly employed Rule B. *Id.* at 444. Once a plaintiff has established the technical requirements required by Rule B, the burden then shifts to the defendant to establish the three limited bases for vacatur. *Id.* Finally, *Aqua Stoli* held that it is improper for a district court to engage in a fact-intensive inquiry regarding the technical requirements of Rule B at a Rule E(4)(f) post-attachment hearing. "Courts in a maritime attachment action are not permitted to make substantive determinations on the plaintiff's underlying claim, since Rule B specifies the sum total of what must be shown for a valid maritime attachment." *The Rice Co. v. Express Sea Transp. Corp.*, 2007 U.S. Dist. LEXIS 84300 at *6 (S.D.N.Y. November 15, 2007) *citing Aqua Stoli,* 460 F.3d at 447. "Determining the merits of these underlying issues would undermine the standard that 'a proper Verified Complaint is all that is required' to sustain an attachment". *The Rice Co. v. Express Sea Transp. Corp.,* 2007 U.S. Dist. LEXIS at *4.

## POINT II

### INTERMARE HAS A VALID PRIMA FACIE
### MARITIME CLAIM AGAINST NAKANISHI

Nakanishi argues that Intermare does not have a valid *prima facie* breach of charter claim against it because Intermare has failed to show it has a contractual relationship with Nakanishi with respect to the Charter Parties and further that even if it were a party, Intermare has failed to sufficiently allege that Nakanishi repudiated the Charter Parties. *Nakanishi's Memorandum of Law at 6, 8.*

"Under the prima facie standard, a plaintiff need not present any evidence in support of his claim. Plaintiff's complaint must contain factual allegations that meet Supplemental Rule E(2)(a)'s heightened pleading standard by stating the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." *Padre Shipping, Inc. v. Yong He Shipping a/k/a Yong He Shipping (HK) Limited,* 2008 U.S. Dist. LEXIS 34428 at *8-9 (S.D.N.Y. April 25, 2008).

In *Transportes Navieros Y Terrestes, S.A. de C.V. v. Fairmount Heavy Transport, N.A.,* 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007), Judge Preska recently summarized that "[a]lthough the Court of Appeals has not stated exactly what a plaintiff must show to make out a '*prima facie* admiralty claim,' many district courts that have examined this issue since *Aqua Stoli* have adopted the 'limited inquiry contemplated by *Aqua Stoli*' and have adopted a basic definition of the term *prima facie.*" *Id.* "The Court of Appeals in *Aqua Stoli* stated that 'our conclusion leads us to reject the reasoning of the more recent district court decisions that have engaged in a broader Rule E(4)(f) inquiry" including a district court vacatur inquiry that would impose a 'fact-intensive inquiry' into a Rule E(4)(f) vacatur hearing." *Id. (citing Aqua Stoli Shipping Ltd.,* 460 F.3d at 445). The Court in *Transportes Navieros Y Terrestes* confirmed that a plaintiff need not prove its case or present evidence. All that is required is a verified complaint alleging a *prima facie* valid maritime claim.

Nakanishi contends that it "remains perplexed as to why it has been named in this action, especially since (a) it never signed nor authorized anyone at Namirei-Showa or SN Navigation to sign the Charter Parties on its behalf and (b) it had not ownership or other cognizable interest in the Vessels it is alleged to have chartered to Plaintiff pursuant to the Charter Parties."

13

*Nakanishi's Memorandum of Law at 9.* This statement is inconsistent with Nakanishi's participation in the construction of the Vessels, even after the Charter Parties were signed, and seems incredible given Nakanishi's heavy involvement in negotiating and detailing the specifications for the Vessels. It also seems incredible that after being so involved in the constructions and specifications of the Vessels, that it should simply disappear as a party to the Charter Parties without communicating such to Intermare or its brokers. In any event, this issue will be determined in the English High Court and the London arbitration.

As applied to the facts of this case, Intermare's allegations, including its allegation that Nakanishi is a party to the Charter Parties (*Verified Complaint* ¶ 7), repudiated the Charter Parties, (*Verified Complaint* ¶ 15) set forth a valid *prima facie* maritime claim within the holdings of *Aqua Stoli, Transportes Navieros Y Terrestes, S.A.*, and *Tide Line*.

Nakanishi contends that it never authorized anyone to enter into the Charter Parties on its behalf that it is alleged to have repudiated, so no enforceable contract exists between Nakanishi and Plaintiff. To the extent that Nakanishi challengers the substance of Intermare's claims, it arguments go to the ultimate merits of the claim, which are more properly the subject of the pending London arbitration and English High Court proceedings. *See Ronda Shipping Management Inc. v. Doha Asian Games Organising Committee*, 511 F. Supp. 2d 399, 404, 2007 U.S. Dist. LEXIS 72694 at *9-10 (S.D.N.Y. September 21, 2007)(arguments on substance of plaintiff's claims go the merits of the claims, which are more properly the subject of pending litigation in London) ; *World Reach Shipping Ltd. v. Indus. Carriers Inc.,* 2006 U.S. Dist. LEXIS 83224 (S.N.D.Y. November 9, 2006)(refusing to evaluate the merits of plaintiff's claims when evaluating whether plaintiff had established a prima facie admiralty claims because the merits were more properly the subject of the underlying arbitration.) Intermare filed a Complaint

against Nakanishi asserting a claim under maritime law as the Complaint alleges that Intermare repudiated the Charter Parties, maritime contracts, and prays for an attachment and states that Nakanishi cannot be found in this District. The Charter Parties are subject to arbitration in London and governed by English law. The issue of whether Nakanishi was a party to the Charter Parties is governed by English law and is for the London arbitrators and the English High Court to decide, not for this Court. *See Glory Wealth Shipping Service Ltd. v. Five Ocean Corporation Ltd.*, 2008 U.S. Dist. LEXIS 60967 at *9 (S.D.N.Y. August 4, 2008); *Finecom Shipping Ltd. v. Mutli Trade Enters. AG,* 2005 U.S. Dist. LEXIS 25761 at *4 (S.D.N.Y. October 24, 2005) (holding "a court's ability to understand the merits of a dispute at an early stage is limited, and courts should be reluctant to prejudge the merits of claims based essentially on the pleadings and a sparse record consisting of a few documents, in advance of any discovery. This is particularly so when the ultimate merits will be decided not by this Court, but by an arbitration panel in another country.)

Nakanishi asks this Court to look beyond the plain mandate of these holdings and engage in fact intensive inquiry in an attempt to determine the true extent of Nakanishi's involvement in the Charter Parties. Nakanishi's broker repeatedly represented Nakanishi as an owner of the Vessels. Whether Nakanishi authorized such representation is a question of fact. Moreover, whatever Nakanishi's intent or motive was in continuing to participate in the construction of the Vessels after the Charter Parties were signed, the end result is the same, Intermare believed it remained a party to the Charter Parties.

In support of its Motion to Vacate the attachment, Nakanishi submits the affidavit of Masami Nakanishi (hereinafter "Nakanishi Decl."). Mr. Nakanishi declares under the penalties of perjury under the laws of the United States of America that the statements contained in the

15

Declaration are true and correct. *See Nakanishi Decl., page 7.* However, Intermare notes that Mr. Nakanishi admits that the "speaks almost no English". *Nakanishi Decl. ¶ 11.* The Declaration is written in the English language with no indication of who assisted in preparing this Declaration, who has translated the statement, or if it was even translated by a qualified translator, or that is was translated into Mr. Nakanishi's native language before he signed it. If Nakanishi wishes to rely on the Declaration of Mr. Nakanishi, the proper procedure should be to submit a statement from him in his native language, presumably Japanese, with a properly certified English translation.

In any event, Mr. Nakanishi admits that Nakanishi prepared technical specifications for two 12,500 deadweight vessels, which were submitted to Toepfer. *Nakanishi Decl. ¶ 11.* However, he alleges that because Nakanishi was unable to obtain financing to build the two Vessels, it had to inform Namirei-Showa that it could not proceed with the construction. *Nakanishi Decl. ¶ 12.* Nakanishi alleges that around January or February 2007, Namirei-Showa asked it to step down from participation in the construction of the two vessels. *Id.* However, as set forth in the Taylor Declaration, Nakanishi was involved with the construction and details of the Vessel specifications up until at least January, 2008, one month before Defendants' repudiation of the Charter Parties. Nakanishi would have little reason to continue its involvement with the construction of the Vessels if it were not a party to the Charter Parties. In any event, these factual disputes are of the very nature the Second Circuit ruled were inappropriate for consideration at a post attachment hearing pursuant to Rule E(4)(f).

Additionally, Mr. Nakanishi states "Nakanishi and SN Navigation do not have any capital ties, direct or indirect, nor do they share any common directors or officers." *Nakanishi Decl. ¶ 12.* However, a quick search on Lloyd's Register performed on June 11, 2008, Fairplay's

16

Shipowners Online provides "SN Navigation" with an address of 'care of' "Nakanishi Kikai

Kogyosho Co. Ltd., both with an address of 8-41, Fukuzaki 2-chome, Minato-ku, Osaka-fu,

Japan." This is the same address Nakanishi provides as its registered offices in its Memorandum

of Law. *Nakanishi's Memorandum of Law at 2.* Additionally, a print out from Lloyd's Marine

Intelligence Unit provides details of Nakanishi's ownership structure. Three separate companies

appear to be part of Nakanishi's group, to wit: Phoenix Line Corp. S.A., Royal Novelty

Shipping, and SN Navigation S.A. *Taylor Decl. ¶ 12, 13; See Extract's from Lloyd's Register

annexed to the Taylor Decl. as Exhibit 1.* It follows that SN Navigation, already a part of

Nakanishi's group, would have authority to act on behalf of Nakanishi and therefore did not

require a Power of Attorney. Namirei-Showa, which is not part of Nakanishi's group, clearly did

have to nominate SN Navigation and authorize it to act on its behalf. Hence, Nakanishi did not

need to execute a separate power of attorney or performance guarantee for SN Navigation, as

Namirei-Showa did. *See Taylor Decl. ¶ 14.*

Intermare has alleged a *prima facie* maritime claim against Nakanishi for repudiation of

the Charter Parties. Nakanishi does not dispute that Intermare's claims arising from the

repudiation of the Charter Parties sound in admiralty. "[A] maritime contract is one that 'related

to a ship in its use as such, or to commerce or to navigation on navigable waters, or to

transportation by sea or to maritime employment." *Stolt-Nielsen SA v. Celanese AG*, 430 F. 3d

567, 572 (2d Cir. 2005).

Thus, for the foregoing reasons, Intermare has alleged a valid *prima facie* maritime claim

against Nakanishi arising from the repudiation of the Charter Parties.

Finally, Nakanishi does not allege that it is subject to suit in an adjacent jurisdiction or

another convenient jurisdiction, nor does it allege that Plaintiff could obtain *in personam*

jurisdiction over it in the district where Plaintiff is located, nor has not shown that Intermare has otherwise obtained sufficient security. Additionally, Nakanishi has admitted that it has a property interest in the attached funds. *Nakanishi's Memorandum of Law at 1.* Based on the foregoing, Nakanishi's motion to vacate must be denied as it fails to advance any legitimate basis upon which Intermare's Rule B attachment may be vacated pursuant to Rule E(4)(f).

## CONCLUSION

WHEREFORE, for all of the foregoing reasons Intermare respectfully requests that this Court deny Nakanishi's Motion to Vacate Maritime Attachment and deny its Motion to Dismiss Plaintiff's Verified Complaint in its entirety against Nakanishi.

Dated: September 4, 2008
      New York, NY

                              LENNON, MURPHY & LENNON, LLC
                              *Attorneys for Plaintiff*
                              *Intermare Transport GmbH*

                              By: _____
                              Patrick F. Lennon (PF 2162)
                              Anne C. LeVasseur (AL 3333)
                              420 Lexington Avenue, Suite 300
                              New York, NY 10170
                              (212) 490-6050 – phone
                              (212) 490-6070 – facsimile
                              pfl@lenmur.com
                              acl@lenmur.com

## AFFIRMATION OF SERVICE

I hereby certify that on September 4, 2008 a copy of the foregoing MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO VACATE MARITIME ATTACHMENT AND DISMISS PLAINTIFF'S COMPLAINT was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF system.

By: _____

Anne C. LeVasseur